

RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/8/14

c

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DONNA ANDRUS                              DOCKET NO:1:13-cv-01374

VERSUS

COMMISSIONER SOCIAL                       JUDGE JAMES T. TRIMBLE, JR.
    SECURITY ADMIN.                       MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION

Before the court is a complaint filed by Donna Andrus ("Andrus") against the Acting Commissioner of the Social Security Administration ("Commissioner"). Andrus seeks judicial review of the Commissioner's final decision denying benefits.

Andrus claims the Administrative Law Judge ("ALJ") erred in the following respects:

1.  The ALJ erred in failing to find her carpal tunnel syndrome, abdominal pain and depression were severe impairments, either alone or in combination, and erred in failing to develop the record on limitations stemming therefrom;

2.  The ALJ erred in failing to consider obesity throughout the sequential process as required by SSR 02-1p; and,

3.  Substantial evidence does not support the ALJ's reliance on the vocational expert testimony and the Step Five finding is not supported by substantial evidence.

Pertinent Facts

On March 31, 2011, Andrus filed a Title XVI application for supplemental security income ("SSI")[1] and on April 4, 2011, she filed a Title II application for a period of disability and disability insurance benefits. According to both applications, she was 25 at the time of onset (December 31, 1991) her disability was due to degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, obesity, hypertension, bilateral carpal tunnel syndrome, back and neck nerve damage, abdominal conditions causing pain, depression and a nervous condition.

On July 15, 2011, both applications were denied. Andrus filed a request for a hearing date and a hearing was held on April 3, 2012. During the hearing, Andrus testified she was 45 years old, was 5 feet 3 inches tall and weighed 160 pounds (R. 28). She advised she was treated every three months for back pain which she managed with muscle relaxers (R. 30). She further advised that she controlled her blood pressure, depression and anxiety with medication (R. 30).

She complained of pain in her tail bone as well as nerve pain and numbness in her legs (R. 30). While she had not undergone surgery, it was discussed and she underwent an MRI to determine whether surgery was necessary (R. 30-31). She also explained she has a pinched nerve in her neck that would to flare up when she stood too long (R. 31).

Her depression and anxiety caused her to want to stay in bed and not have to function (R. 31). However, she was never hospitalized,

_____

[1] Andrus' Title II application for a period of disability and disability insurance was orally withdrawn at the April 3, 2012 hearing (R. 34).

she never considered harming herself or anyone else and she socialized with both friends and family (R. 31-32, 39).

Andrus' activities of daily living consisted of waking around 6:00 a.m. and returning to bed around noon to take a three hour nap (R. 37). She attributed her need for a nap to the medication she took to ease her back pain. She did not have any problems attending to her own personal hygiene but she did not do yard work or laundry (R. 37). Andrus attended school in special education classes and successfully completed the ninth grade (R. 35). She could neither read nor pay bills without the help of others (R. 31,34-36).

Andrus neither worked nor attempted to work in at least 15 years (R. 33) so she had no transferable job skills. She claimed her disabilities prevented her from lifting more than 10 pounds and sitting or standing more than 10 or 15 minutes before having to change her position (R. 33).

The ALJ posited a hypothetical question to the VE asking if someone with the same age, education and work experience as Andrus who could do a full range of sedentary work (i.e. lift only 10 pounds occasionally, stand and walk two out of eight hours, sit for six out of eight hours with normal breaks) would be able to perform any jobs that existed in the national economy (R. 42). The VE advised that no jobs existed at the sedentary level but one who could perform a full range of light work (lift up to 20 pounds occasionally, lift and carry only 10 pounds frequently, stand and walk for six hours out of eight sit for six out of eight hours with normal breaks) would be able to do

the work of a garment sorter, linen room attendant or routing clerk (R. 42-43).

Upon cross examination, the VE acknowledged a routing clerk would need to possess rudimentary reading and writing skills (R. 43). He also acknowledged that none of the listed jobs allowed for a three hour break (R. 45).

### ALJ's Findings

The ALJ issued a decision on April 26, 2012. He concluded Andrus was not disabled at any time from December 31, 1991 though the date of the decision (R. 20). In reaching this conclusion, he found Andrus met the insured status requirements of the Social Security Act through June 30, 1995 (R.14). However, she had not engaged in substantial gainful activity since the onset of her disabilities (R. 14).

The ALJ determined Andrus suffered from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, obesity and hypertension. He further determined that Andrus' diagnoses of carpal tunnel syndrome and depression presented only minimal limitations and were therefore, non-severe impairments (R. 14-15).

The ALJ noted Andrus had no limitations in her activities of daily living as she could "tend to her personal needs as permitted by her physical limitations". However, her social function was mildly limited because her socialization was limited to a few friends and family members (R. 15). He found her concentration, persistence or only mildly limited as "claimant could follow simple and complex

instructions" and "her hobby was puzzle books" (R. 15). Finally, the ALJ determined Andrus did not have any episodes of decompensation.

Based on the foregoing, the ALJ concluded Andrus did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. He found Andrus had the residual functional capacity (RFC) to perform a full range of light work (R.16). Further, he found the RFC determination was "justified" as Andrus' "allegations of disabling symptoms and limitations *[were] not fully supported by the evidence presented at hearing....*" as well as "the radiographic findings" (R. 19).

The ALJ noted Andrus had no past relevant work and, thus, no transferability of job skills. He also noted she was a younger individual who was illiterate but could communicate in English. The ALJ then considered these findings as well as Andrus' RFC and consulted the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Part P, Appendix 2 and determined she was "not disabled". (R. 20).

Andrus filed a request for review on June 4, 2012 but the Appeals Council denied her request on April 5, 2013. Accordingly, she filed the instant lawsuit seeking judicial review of the matter (Doc. 1).

## Scope of Review

When considering Social Security appeals, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether substantial evidence exists in the record to support the Commissioner's decision and whether there are any prejudicial legal errors. <u>McQueen v. Apfel</u>, 168 F.3d 157 (5th Cir.1999). For the

evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. <u>Falco v. Shalala</u>, 402 U.S. 389, 401 (1971). It must be "more than a scintilla and less than a preponderance. <u>Id.</u>

Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir.1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir.1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir.1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir.1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir.1992). The Court does have the authority to set aside factual findings that are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. To make a finding that substantial evidence does not exist requires court to conclude there is a "conspicuous absence of credible choices" or "no medical evidence". <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir.1988); <u>Dellolio</u>, 705 F.2d at 125.

## Law and Analysis

### Impairments

Andrus contends that the ALJ erred because he did not find her carpal tunnel syndrome, chronic abdominal pain, depression and anxiety or fibromyalgia, either alone or in combination, to be severe impairments.

<u>Carpel Tunnel Syndrome:</u>  On May 12, 2009, Andrus complained of bilateral arm pain and tingling in her left arm. The doctor attributed her symptoms to carpal tunnel syndrome and prescribed a cock up splint for her left wrist (R. 362-367). Andrus returned on October 29, 2009 for a follow up appointment complaining of chronic neck and back pain and numbness to her right side and requesting a refill for pain medication (R. 358, 360). The doctor again noted carpel tunnel syndrome and released her noting "voices no complaints; condition is unchanged". No other evidence regarding Andrus' carpel tunnel or its effect on her ability to perform basic work activities is in the record. Accordingly, the medical evidence does not support a finding that the impairment is severe.

<u>Depression and Anxiety:</u>  The same is true with respect to Andrus' depression and anxiety. Both the medical records and her own testimony establish her depression and anxiety were well controlled with medication. She had only a couple of bad days a month, was never hospitalized, did not contemplate harming herself or others and was not referred to the mental health clinic until May 2011. Though medical records establish a diagnosis of depression, they also reference the control of the impairments with medication.

The ALJ's psychiatric review technique is supported by the finding made by the non-examining state agency physician, Tom Ray, Ph.D.. Dr. Ray opined Andrus' claims regarding the limitations she experienced as a result of her depression and anxiety were undermined by the reports she provided regarding the activities of daily living which she could perform (R. 62). Though Andrus contends the ALJ should have inquired more about her depression and anxiety and the limited effects therefrom, she points to no treating physician or documentation which would serve to undermine the reliability of the ALJ's determination.

Abdominal Pain: Andrus argues her abdominal pain is a severe impairment and cites eleven dates on which she visited a doctor for treatment. On one occasion, she was diagnosed with kidney stones and hematuria but no other records regarding further treatment are found. All of the other entries are for abdominal pain attributed to either gynecological issues or gastroenteritis.

The gynecological complaints began in August 2005 and continued through 2006. No complaints are shown in the 2007 records but in 2008, Anders underwent an endometrial biopsy and endocervical curettage. Thereafter, all abdominal complaints were diagnosed as gastroenteritis.

None of these impairments either on its own or in combination rise to the level of a severe impairment. While the records reflects diagnoses of the various impairments, none of them continued for long periods of time, required treatment by a specialist nor were attributed as interfering with her daily functions.

Fibromyalgia

Andrus' claim that fibromyalgia is a severe impairment lacks merit as the record is simply lacking any credible evidence supporting the diagnosis. There are no tender point examinations nor clinical findings to substantiate the diagnosis. Without such, Andrus' claim should be dismissed.

Development of the Record

Finally, Andrus contends the ALJ failed to fully and fairly develop the record with respect to these impairments. The Fifth Circuit Court of Appeal has clearly stated:

> This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result."

Carey v. Apfel, 230 F.3d 131, 142 (5th Cir.2000) (internal citations omitted). Andrus claims are conclusory and unsupported. She fails to assert a single argument as to how she was prejudiced or what evidence should and could have been acquired and might have altered the result. Without a showing of prejudice, the claim lacks merit and should be dismissed.

Obesity

Andrus argues that ALJ failed to consider her impairment of obesity and the limitations stemming therefrom throughout the sequential process. Specifically, she argues that he failed to mention the state agency physician's finding that she could only squat 80% and that she has an obesity-based abdominal obstruction.

The ALJ found Andrus' obesity was a severe impairment (R. 14). He cited SSR 02-01p and the fact obesity "may contribute to exertional and postural limitations" (R. 18). He then considered these limitations when determining her RFC (R. 18). Though the ALJ did not specifically mention the obesity related limitations noted by the state agency physician, it is of no consequence. He noted that her obesity could pose limitations and that it was considered when determining the RFC. All of Andrus' impairments were considered when reaching her RFC so, in effect, the ALJ did consider how her obesity affected her ability to work.

Finally, Andrus fails to argue or show how she was prejudiced by the failure to specifically mention squatting and abdominal obstruction limitations. Accordingly, the issue lacks merit.

Residual Functional Capacity

Andrus claims the ALJ erred by not weighing the opinion evidence in accordance with 20 C.F.R. §404.1527(d) and by stating an RFC that was not supported by medical evidence. Specifically, Andrus claims the only medical opinions in the record are from Porscha Morgan, SDM and Dr. Bamgbola but because an SDM is not an accepted medical source only Dr. Bamgbola's opinion may be considered. Further, because that opinion is inconsistent with the determined RFC, the RFC is not supported by the evidence.

While medical opinions should be given considerable weight, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. Newton v. Apfel, 209 F.3d 448, 453

(5th Cir.2000). As long as "good cause" is shown, an ALJ is free to afford less weight, little weigh or no weight to opinion evidence. "Good cause" exceptions include brief and conclusory statements, statements unsupported by medically acceptable clinical, laboratory or diagnostic techniques or statements otherwise supported by the evidence. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir.1994).

Here, the ALJ afforded little weight to the opinion of the examining state agency physician, Dr. Bamgbola. In doing so, he noted that the limitations suggested by Dr. Bamgbola were inconsistent with his own narrative report. Dr. Bamgbola noted her normal straight leg raising test, mild decreased range of motion of the lumbar spine, and ability to walk on her heels and toes; yet, he opined she was limited to standing 1 to 2 hours at a time and no more than 4 or 5 hours a day and walking no more than 2 or 3 blocks but she could lift 40 pounds. Accordingly, the ALJ was correct in affording little weight to Dr. Bamgbola's opinion due to internal inconsistencies.

Further, the ALJ's decision to give little weight to Dr. Bamgbola's opinion did not undermine finding that Andrus could perform a full range of light work. A RFC is a medical assessment of the work a claimant can perform despite his or her limitations and is based on **all** of the relevant record evidence. 20 C.F.R. §416.954.

Prior to reaching his determination, the ALJ noted medical records regarding Andrus hypertension, musculoskeletal problems, complaints of pain, issues with drowsiness from taking Neurotin, depression and anxiety and obesity. These medical records were

examined along with her testimony.  The ALJ determined that Andrus' reports of musculoskeletal problems were not supported by the diagnostic evidence as the MRI of her cervical spine was normal and the x-ray of her lumbar spine showed increased radiodensity of L5 of uncertain significance with no osteo-degenerative changes.  Likewise, he found her complaints of severe emotional problems lacked credibility as the record showed they were controlled with medication and her first referral to a mental health clinic was in May 2011.  He found her hypertension was controlled with medication and her subjective complaints of pain were not fully credible considering the medical evidence, doctors' reports and her testimony and demeanor during the hearing.

<u>VE's Testimony and Finding at Step 5</u>

Andrus' final contention is the ALJ failed to resolve conflicts in the VE's testimony and then improperly relied upon the grids to determine she was not disabled.

The VE testified that Andrus could perform the work of a routing clerk, linen room attendant and/or garment sorter.  However, on cross examination, he conceded that a routing clerk would need to be able to read.  Further, the job of linen room attendant was classified as medium work and required a level two language level, and a garment sorter would be required a level 1 language level.  Due to Andrus' illiteracy and RFC, she could not perform any of the listed jobs.  However, the ALJ failed to resolve this issue.

Resolution of the conflicts in the VE's testimony is of no consequence. The ALJ found Grid rule 202.16 applied as she was a younger individual, who was illiterate, with the RFC for light work and had no past relevant work. Application of this rule directed a finding of not disabled.[2]

The only objection Andrus voices with respect to the application of this rule is the finding that she possesses a RFC to perform a full range of light work. However, this objection is moot as the RFC is supported by substantial evidence. Accordingly, the ALJ properly relied upon the Medical-Vocational Guidelines, applied rule 202.16 and determined Andrus was not disabled.

## Conclusion

Based on the foregoing,

IT IS RECOMMENDED that Andrus' appeal be DENIED.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the

---

[2] Medical-Vocational Guidelines may be used to determine whether a claimant is disabled if the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his RFC. Andrus claims that she has a RFC for sedentary rather than light work but she does not argue it is affected, much less significantly affected by her illiteracy. In fact, she contends Grid rule 201.17 (younger individual with a RFC for sedentary work who is illiterate and possesses no prior work experience) applies.

magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 7th day of July, 2014.

James D. Kirk
UNITED STATES MAGISTRATE JUDGE